This case is Spivey v. The United States, Mr. Brignac. Did I get that right? Yes, you did, Your Honor. All right. You may proceed. Thank you. May it please the Court, until the Supreme Court decided the Nichols case in 2016, there was a circuit split, and the United States took the position that the jurisdiction that someone left in a SORNA case may have had a connection to that case as a place where he either had to deregister or at least in some way inform he was there. The argument was that it was still a jurisdiction involved. What the Supreme Court did in Nichols, which was not a venue case but is still very important, because what the Supreme Court did was indicate that under the text of SORNA, the jurisdiction you left is no longer a jurisdiction involved. You have no legal duty there whatsoever. You have a legal duty if you go to a new state that is a SORNA jurisdiction to register there. So the government, in order to try and argue that venue is still appropriate in the jurisdiction where you have no legal duty, makes the argument that, well, under car, the travel is an essential element. And the travel occurred there, and thus there was some conduct you engaged in. Do you agree that an essential element of this crime, or to have a federal crime, is interstate commerce? And if you do agree with that, why doesn't crossing the state line trigger the SORNA division? Your Honor, it is an essential element either that you have a federal conviction or that your body crossed a state line. But just because something is an essential element does not mean it is a place where conduct necessarily occurred. But car says, doesn't it, that this is not an element in the nature of a jurisdictional hook, at least only, that this travel is the very conduct at which Congress took aim. Yes, and Your Honor, and I think... It's a conduct element, not just a circumstance element. And, Your Honor, I would disagree, because as we're here today talking about venue, conduct is a legal term of art in these venue cases that we and the government talk about in our briefs. Conduct, unfortunately from my position, and I think this adds to the confusion, is also a plain English word with a plain English meaning. And I think it way overreads car to say that their use of the word conduct in a case that didn't mention the word venue was actually using that term as a legal term of art in the venue context. They were using... I think it kind of was, because they had to explain why the travel had to be pre-enactment. If it were just sort of in the nature of a jurisdictional hook, like a felon in possession statute, then it really wouldn't matter whether you traveled before or after the statute. But the point was, the reason it matters is because this is literally the conduct that Congress is trying to outlaw. So I mean, it's not like it... I understand what you're saying, that it wasn't a venue case, but it's not like this was sort of dicta and unimportant, and it was important for reasons that are related to this case. It was more than a jurisdictional element. And Your Honor, I would disagree that in our context, it's more than a jurisdictional element. What the Supreme Court said in Carr is that Congress used the word travels, and by using the word travels, it had to be a forward-looking analysis. Congress did not use the word traveled. So it was not, I submit, saying that this was therefore necessary conduct. In order to make the argument that the government wants to make, that this creates the sort of nexus we're talking about, there has to be... What it wants to be is a nexus between the travel and the failure to register. And Carr came out in 2010, and in the decade since, I am not aware of any district or circuit court that has adopted the argument that a defendant could say, I am not required to register under SORNA, because when I traveled from one state to another, I was either in or I went to Colorado on a vacation, and I decided it was so beautiful, I was going to stay there, please send my stuff. That's what the government's position requires, and in fact, they admit as much in their brief. They say this can't be a jurisdictional element because it's a nexus. But again, I'm aware of no case in a decade that has actually created that nexus. I think a very instructive case with this court cites in Bowens, and actually another thing, your honor, Bowens, from this court in 2000, expressly said that when looking at venue, we do not look at the overall congressional purpose of the statute. So the Supreme Court did say that when Congress passed this law, part of its take a step back, 10,000 foot purpose was to say, let's try and find these sex offenders who are moving between states. But this court expressly held that that purpose is not relevant. Well, then it made that purpose an essential element of the crime. Yes. Right? Which we're told in Carr. Isn't that more of a lower level of analysis? Every element of the crime, your honor, is an essential element. If the government does not prove it- Right, a non-jurisdictional element. And I would not say, your honor, it is a jurisdictional element. It's an element the government needs to prove. But again, looking at the structure of the statute, it's in the same place in the statute as the federal conviction, and it does not say someone who travels knowing that they're traveling in interstate commerce, intending to avoid federal jurisdiction. And I think a very interesting thing to look at is the Supreme Court 1998 case in Cabrillas, which the defendant there was charged with a drug conspiracy in Missouri. She was also charged with money laundering in Florida that were related to that conspiracy. So obviously, she was connected to the conspiracy, and the essential element was that that had to be criminally derived proceeds. So an essential element of that crime was that the money she laundered in Florida had to be derived from the crime, which in that case was in Missouri. The Supreme Court said, that's all true, and for purposes of venue, that's all irrelevant. The only conduct she engaged in was money laundering in Florida. And then what, yes, your honor? We don't have any public authority on this question. And so obviously, we go looking to see what other circuits have done. Do you acknowledge that a majority of our sister circuits disagree with your argument? After Nichols in 2016, there's a two-circuit split. There's Hasledge, which comes out in my favor, and there's Holcomb from the Second Circuit. Prior to Nichols, the unpublished cases from this circuit and the majority of circuits do come against us. But I do not, your honor, think any of those cases engage this question at the level that Mr. Rubin and I have engaged in. And I think it's very telling, to get back just quickly to the Cabrillas case, that in 1998, the Supreme Court said, venue doesn't lie. You derived criminal proceeds in Missouri from a conspiracy you were a part of, but the money you laundered in Florida, so venue doesn't lie in Missouri. Three years later, in 2001, and it's codified at 18 U.S.C. 1956 I, Congress amended the statute to say, okay, venue can lie in the jurisdiction from which the proceeds were criminally derived if the defendant was involved in moving them to the new jurisdiction. Congress could do the exact same thing here, your honor. If Congress wants venue to lie in the jurisdiction that someone left, it could amend the statute to say, if someone's interstate travel was knowing or voluntary or is in any way for the purposes of evading jurisdiction, then that person, venue could lie in any state he left or any state he went through. And it's very telling that Congress did not do that. Congress can amend the statute. Congress didn't amend the statute. And your honor, I do think, to get back to your question, that the majority of circuits, before Nichols came out, there was still an open question as to whether you had an actual legal duty in the state that you left. Although I did look at the cases, and there was one, I can't remember which, maybe 8th Circuit, that relied on that. But most of the other case law, nobody, by and large, the pre-Nichols cases were not relying on the idea that you had a legal duty to inform your state of departure. It was more that you're traveling. Right. And your honor, for all the reasons given in our briefs, we disagree with that. I do think when there's an open question as to whether you have a legal duty somewhere, addressing the venue question becomes much easier. You feel there needs to be this connection. And I understand that in the majority of these cases, and in fact, based on what we can tell from the record in Mr. Spivey's case, he voluntarily left North Carolina. But I think the government's position, if this court were to adopt it, and if this court were to affirm the district court, really does start to prove too much. If Mr. Spivey left North Carolina, went to Colorado, registered in Colorado, six months later changed jobs, and did not update his registration, could venue lie in North Carolina? Under the government's theory, venue could lie in North Carolina because the only way he's under SORNA is because of that interstate commerce hook. And you make it six months. You make it a year. You make it two years later. The Supreme Court said that we have to read the elements here in SORNA as a sequential connection. The court addressed this idea that if you just have three disconnected elements, you could hypothetically have a crime under the statute. But the court rejected that, right, and said, well, we read them sequentially to be connected to each other. The court said at page 446 in Carr, Your Honor, a sequential reading helps to ensure a nexus between the defendant's interstate travel and his failure to register as a sex offender. So that's it. The sequential reading ensures the nexus. The sequential reading is all that's required. The Supreme Court did not say. No, it sounds like they're saying a nexus is required, and a sequential reading helps establish the nexus. Yes. And that's all that's required under the current understanding of the statute to create the nexus. It ensures the nexus, the sequential reading. And if the Supreme Court had meant something different in Carr, over the last 10 years, someone in some of these hypotheticals that we talk about, I move to Colorado, when I leave to go to Colorado, I have absolutely no intention of staying there, but I change my mind, at some point, these cases would have come up. And we would have said, if you read Carr, you need more than a sequential reading. But don't you agree that a clear statement in Carr is interstate travel was a very conduct which Congress took aim, and if that's true, do you have any post-Carr cases to support your position? Two. I mean, I have the Haslitch case, Your Honor, from the Seventh Circuit, and much as I responded to Judge Harris, when the Supreme Court used the word conduct, they were not using it as a venue legal term of art in a non-venue case. And as this Court held in Bowens, overall congressional purpose does not ask and answer the venue question. What asks and answers the venue question is the place where the defendant had, in this case, a legally required act, or were the defendant engaged in conduct. And the travel in SORNA does not need to be knowing, does not need to be voluntary, does not need to be undertaken with any improper purpose, and I don't know if the government still has this position, but at least in the Second Circuit, in the Gundy litigation there, they called it a jurisdictional element and said it didn't even need to be voluntary. That if someone's in the Bureau of Prisons and they're moved from one state to the other, that's enough, it's a jurisdictional checkbox. That's the position they took in the Gundy case, and I think it's the position that's supported by the text and structure of the statute. There's no mens rea for the travel, and the travel is in a jurisdictional subsection. So, yes. I have a question. Just when we look at venue, generally, does it turn on where you formed the relevant intent, or does it turn on where the conduct occurred? Your Honor, it. Because I didn't think it, I didn't think it was about where you formed the intent. And, Your Honor, I think you're right. It's where the conduct occurred, but mens rea is relevant to answering that question. If I have to knowingly do something, if I have to intentionally do something, then that indicates that that is conduct that I am taking in some voluntary way. If, however, it's something that can happen without my knowledge and even without my consent, then it's not conduct that I've engaged in. This court sees a million 922G felon in possession cases. The gun travels in interstate commerce, and Congress has the overall purpose of regulating the trafficking of firearms in interstate commerce. But, obviously, the gun, no one argues that venue is wherever the gun passed through, or that the defendant had to know, or the defendant had to intend. The gun could have moved in interstate commerce years before the defendant became aware of it. This is very similar. And when the Supreme Court said, to get to Judge Rushing's point, that you have this sequential reading, they didn't add more. They said the sequential reading ensures the nexus. Not that you have a sequential reading, and, of course, the interstate travel itself must in some way be connected to the failure to register, other than simply that they happen one, two, three. That's all the statute requires, and that makes that second element a non-conduct, non-venue element. Before you sit down, and you may want to think about it, what do you want us to do with your Gundy argument other than just recognize that you preserved it? I don't need time to think about that, Your Honor. At this point, it's not error, and it's certainly not plain error. So, again, it's a preservation argument because, obviously, the Supreme Court may change its mind. So you're disagreeing with what you said in your brief, where you said that error is not plain but might become plain because the Supreme Court might change its mind one day. Right. I mean, the Supreme Court could, at this point, as I stand here today, it is not error. It is not plain. Because the Gundy litigation was so, honestly, that was such a strange case with eight justices and a 4-3-1 split, I did feel compelled to preserve it in case something changed. Gundy actually had a petition for rehearing at the Supreme Court that sat for months. But, yeah, at this point, Your Honors, no, we lose on that. We just want to preserve it for the record. I got you. Thank you.  Good morning. May it please the Court. I had an introduction that was talking a little bit about SORNA, but I'd like to actually jump to the last point that my colleague made about felon in possession in 922G because he compared it to the travel of the firearm. But that's what Carr rejected with this exact crime. It was actually that exact analogy. The Seventh Circuit had said you could apply SORNA to pre-SORNA travel because it was just akin to the interstate nexus travel of a firearm. And the interstate nexus travel of a firearm, even when that element was added to the statute, it didn't matter if the travel of the firearm happened before the statute had that element. The Supreme Court specifically rejected that and actually compared it. They said, in this case, the proper analogy is not, as the Seventh Circuit suggested, between the travel of a sex offender and the movement of a firearm. It is between the sex offender who travels and the convicted felon who possesses. To me, I think that is the debate here between the parties. And really the question comes down to, I think we all agree that the travel is an essential element. Is it a conduct element? And I would just submit that that question is not an open one because Carr says that it is a conduct element. And I think that, you know, in the briefing, Mr. Brignac, my friend, had said that it was really just jurisdictional and this aspect wasn't central to the opinion. But that was the case. What I just described, that analogy with the Seventh Circuit, that was what led to the holding. So this was not dicta. It wasn't a mere suggestion. And it also wasn't just one phrase. I mean, it was crucial that it is conduct. So the idea that it's just a jurisdictional element, I would submit is not available as an argument, thanks to Carr. Now, from there, I would submit that the venue analysis becomes pretty straightforward. And it kind of explains why most of the opinions on this, and there are many, Judge Floyd, you mentioned the wide number of circuits and opinions of this court, the analysis is, in most of them, fairly straightforward. Because once you accept that the interstate travel is a conduct element, then you simply have to look at 3237A, which says that when any offense against the United States begun in one district and completed in another, you have venue in either one of those places. And so here we know, since interstate travel is an element, this offense did not begin and end in Colorado and yet involve interstate travel as an element. It doesn't make any sense. So if it didn't begin in Colorado, where did it begin? It began in North Carolina when he engaged in interstate travel from there. And so I think from Carr to that, it is a pretty straightforward reading. And I would address very quickly that the overwhelming majority of circuits, even prior to Nichols that addressed this, they were not relying on the jurisdiction-involved statutory language that Nichols addressed. They were taking the same analysis we take here, the only exception being, Judge Harris, you mentioned, I think it was the Tenth Circuit in Lewis. And it had, frankly, a very complicated analysis for it, I think more complicated than this Court needs to engage in. It did also credit the analysis we're taking along the way, but it said, alternatively, the home state is a jurisdiction-involved. We know that's not true now. But other than that, and now I would also note that after the Seventh Circuit's opinion in Hasledge, two other circuits have weighed in and said that Hasledge conflicts with Carr. And that would be the Second Circuit in Holcomb and the Eleventh Circuit in Llewellyn. That was unpublished. But the Eleventh Circuit had already weighed in in the government's favor in a published case in Llewellyn and said that Nichols didn't change anything. And it's not hard to imagine why Nichols doesn't change anything. Because Nichols, when I say it's not a venue case, I don't mean that in a hand-waving, technical way. I mean that Nichols wasn't about the terms that we use to describe venue. It wasn't even about the same element we're talking about. And I think that's what really distinguishes Nichols. The element in this case that confers venue on the departure jurisdiction is the interstate travel element. That was not even an element of the crime at issue in Nichols. Because Nichols was about a federal sex offender. Federal sex offenders do not need to travel in interstate commerce. So we know that Nichols has nothing to say about that interstate commerce element because it wasn't in that case. And more than that, it was just pure statutory interpretation about what jurisdiction involved means. Does it matter? I just want to give you a chance to address your colleague's argument about intent. I totally understand your argument. Does it matter that the travel doesn't apparently have to be intentional? I don't think it does. I haven't really seen those cases, although I'll certainly acknowledge that the traveling in the Bureau of Prisons is certainly a realistic hypothetical. I don't think it matters. And one case that you could look at for that, and this is one of the cases on this, is the Holcomb case out of the Second Circuit. Now, I think the Second Circuit's case law is a little more crystal clear on the fact that mens rea has nothing to do with venue. And they cite to their own opinions in rejecting that argument. And I think that was a very useful discussion in there. I will say that I found, and this is not in the briefing, I think it sort of came unearthed as we got to the reply brief, but in this court in the United States versus Johnson, and I'll give you the site, it is 510 F3rd 521 at 527. It's a 2007 case. It's not directly on point. But what it said was it didn't matter that in a case where the defendant argued he didn't anticipate his securities fraud conduct would reach into the district he was tried in. This court explained that it doesn't really matter. Venue is, and this is the quote, similar in nature to a jurisdictional element. And therefore, the mens rea aspect doesn't extend to the venue. I think it's not exactly on the same point of does it matter whether the element is intentional? But I would submit that it doesn't. Particularly when you think about the fact that venue is not like personal jurisdiction in civil court. You don't have to have substantial contacts with the forum. Venue can sometimes ignore from relatively minor things. And you can also have times where venue is brought on a defendant by something someone else does, not even himself. Aiding and abetting, for example, or a conspiracy or one of the overt acts done by somebody else was done in another state, and all of a sudden there's venue in that state. So there's not some sort of requirement that ties your personal intent with the forum that you end up in. There is one that requires the conduct, and here we know it's a conduct element because of Carr. So I think that's an interesting point on the mens rea, but I don't think it really changes anything. And the last point that I would say before just taking any questions that the court might have, the only circuit that has gone the other way on this, the Seventh Circuit, I think the dissent in that case does a very nice job of explaining what we think about it, which is that it just is not compatible with Carr. And with great respect to my friend, I think his argument today is not compatible with Carr. Carr said it's conduct. Carr said it's the conduct that Congress was targeting. And if that's the case, then where the interstate travel occurred is appropriate for venue. And in this case, it began in North Carolina. If the court has any questions or concerns, I would be very happy to address them. All right. Thank you very much. Thank you. We ask that you affirm. Mr. Brignette. Thank you, Your Honor. In looking at the various instances in which venue is found versus when they're not found, the ones where venue is found all have something that is lacking here, which is a hook in the text of the statute.  it says that the court, that was a case of harboring a fugitive. So the Eastern District of Virginia issued an arrest warrant. The defendant there harbored the fugitive, the person for whom the warrant was issued, in South Carolina. Despite Virginia's strong interest in the case, there was nothing in the statute that required the defendant that connected it to Virginia. All the conduct, all the harboring had to be in South Carolina. Now, contrast that to cases where this court has found venue. In a Hobbs Act robbery, and this again was the Bowens case, discussing why venue would lie anywhere that commerce was affected by the robbery. And the answer is because in the Hobbs Act itself, it has to be a robbery affecting commerce. So there, in the text of the statute, you have the word affecting commerce. Anywhere commerce is affected, there's venue. Much like in the case Mr. Rubin said, you need not have entered that state. But if you hijack a truck, and you know that the truck's going to Virginia, and you hijack it outside of Virginia, and you're affecting commerce in Virginia, then you could lie in Virginia. Same argument, the Supreme Court in Rodriguez-Moreno talked about the fact that if you have a 924C, you use a gun during and in relation to a crime of violence, where that crime of violence occurred, then you can lie there, even if you never brought the gun into that state. In that case, the person used the gun in Maryland, and the kidnapping venue was proper in New Jersey. But again, it's from the statute, during and in relation to. And that is what is lacking here. And I know Carr uses the word conduct, and I wish it had used a different word, because I think it would clarify a lot of the confusion here. And yes, it is an essential element. And if the government does not prove that to a jury beyond a reasonable doubt, you don't have a conviction. By the same token, if the government doesn't prove that you had an obligation to register beyond a reasonable doubt, you don't have a SORNA conviction. And the difference here is that for neither of those elements, does the defendant actually have to do anything? All that has to happen is that a state line was crossed by his body. And if I may finish with the implications of the government's argument, buying what the government says, and extending Carr to say that this nexus is more than sequential conduct. So the Supreme Court said sequential reading is what shares the nexus. If this court starts to find that actually there is, there has to be under the statute, a nexus between the interstate conduct and the failure to register, then what comes next? Do defendants start getting jury instructions on that point? Do juries have to find a connection beyond a reasonable doubt? Are there going to be trials about when I left for Colorado, I totally planned to come back, and then I didn't come back. None of that has come up, but buying the government's reading and expanding Carr, expanding what again, I think was one phrase in Carr, which was a case about interpreting present tense verbs. And saying that, there is some amorphous nexus outside of the text of the statute that the government needs to prove is going to cause a whole lot more problems than whatever problems it purports to solve, and I would respectfully submit is certainly outside of the judiciary's role of adding a nexus element to the statute in order to save it. If the statute violates federalism by not having enough of a connection between the interstate travel and the failure to register, then it's outside of Congress's power to write, and this court cannot rewrite it to save it. Thank you very much, your honors. You want to take a break, Pam? I'm fine, I can write. You need a break. All right, we'll come down and recount and take a short recess. Does all of the court will take a brief recess?
judges: Henry F. Floyd, Pamela A. Harris, Allison J. Rushing